WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Diana Woodmass,

                Plaintiff,

v.

Carolyn W. Colvin, Acting Commissioner
of the Social Security Administration,

                Defendant.

No. CV-14-00895-PHX-ESW

**ORDER**

      Pending before the Court is Plaintiff Diana Woodmass' ("Plaintiff") appeal of the Social Security Administration's ("Social Security") denial of her claim for disability benefits.  Plaintiff filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act.  Plaintiff alleges disability beginning on July 9, 2010.

      This Court has jurisdiction to decide Plaintiff's appeal pursuant to 42 U.S.C. §§ 405(g), 1383(c).  Under 42 U.S.C. § 405(g), the Court has the power to enter, based upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing.  Both parties have consented to the exercise of U.S. Magistrate Judge jurisdiction.  (Doc. 12).  After reviewing the Administrative Record ("A.R."), Plaintiff's Opening Brief (Doc. 23), Defendant's Response Brief (Doc. 24), and Plaintiff's Reply

(Doc. 33), the Court finds that the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence and is free of harmful legal error. The decision is therefore affirmed.

## I. LEGAL STANDARDS

### A. Disability Analysis:  Five-Step Evaluation

The Social Security Act (the "Act") provides for disability insurance benefits to those who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1).  The Act also provides for Supplemental Security Income to certain individuals who are aged 65 or older, blind, or disabled and have limited income.  42 U.S.C. § 1382.  To be eligible for benefits based on an alleged disability, the claimant must show that he or she suffers from a medically determinable physical or mental impairment that prohibits him or her from engaging in any substantial gainful activity.  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(A)(3)(A). The claimant must also show that the impairment is expected to cause death or last for a continuous period of at least 12 months.  *Id.*

To decide if a claimant is entitled to Social Security benefits, an ALJ conducts an analysis consisting of five questions, which are considered in sequential steps.  20 C.F.R. §§ 404.1520(a), 416.920(a).  The claimant has the burden of proof regarding the first four steps:[1]

> **Step One**:  Is the claimant engaged in "substantial gainful activity"?  If so, the analysis ends and disability benefits are denied.  Otherwise, the ALJ proceeds to step two.

> **Step Two:**  Does the claimant have a medically severe impairment or combination of impairments?  A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments,

---

[1] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

disability benefits are denied at this step.  Otherwise, the ALJ proceeds to step three.

**Step Three:** Is the impairment equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(d), 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step of the analysis.

**Step Four:**  Does the impairment prevent the claimant from performing work which the claimant performed in the past?  If not, the claimant is "not disabled" and disability benefits are denied without continuing the analysis.   20 C.F.R. §§ 404.1520(f), 416.920(f).  Otherwise, the ALJ proceeds to the last step.

If the analysis proceeds to the final question, the burden of proof shifts to the Commissioner:[2]

**Step Five:** Can the claimant perform other work in the national economy in light of his or her age, education, and work experience?  The claimant is entitled to disability benefits only if he or she is unable to perform other work. 20 C.F.R. §§ 404.1520(g), 416.920(g).   Social Security is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's residual functional capacity, age, education, and work experience.  *Id.*

**B.  Standard of Review Applicable to ALJ's Determination**

The Court must affirm an ALJ's decision if it is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990).  Although "substantial

---

[2] *Parra*, 481 F.3d at 746.

evidence" is less than a preponderance, it is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)).  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id.*

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusions.  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993).  If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination.  *See Morgan v. Comm'r of the Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  This is because the ALJ, not the Court, is responsible for resolving conflicts, ambiguity, and determining credibility.  *Magallanes*, 881 F.2d at 750; *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court also considers the harmless error doctrine when reviewing an ALJ's decision.  This doctrine provides that an ALJ's decision need not be remanded or reversed if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted); *Molina*, 674 F.3d at 1115 (an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion") (citations omitted).

## II.  PLAINTIFF'S APPEAL

### A.  Procedural Background

Plaintiff was born in 1957, has a GED, and earned a medical records specialist certificate from the Arizona Institute of Business and Technology.  (A.R. 48, 50-51). Plaintiff has not worked since 2007, but has previously worked as a receptionist,

bartender, and insurance checker.  (A.R. 52, 65).  This case involves Plaintiff's second application for Social Security benefits.  Plaintiff filed her first Title II and Title XVI applications in January 2009.  In his July 8, 2010 decision (the "First Decision"), the ALJ held that Plaintiff was not disabled.  (A.R. 44, 249, 257).  After the Appeals Council denied review, Plaintiff filed an appeal with the U.S. District Court for the District of Arizona.  On June 24, 2013, the Court affirmed the ALJ's First Decision.  (Case No. 2:12-cv-01367-GMS (D. Ariz. June 23, 2013, Doc. 19)).

On March 17, 2011, Plaintiff filed another Title II application for disability insurance benefits.  (A.R. 236).  On April 14, 2011, Plaintiff filed another Title XVI application for supplemental security income benefits.  (A.R. 244).  The applications allege that on July 9, 2010, at the age of 52, Plaintiff became unable to work due to the following impairments: (i) heart disease; (ii) diabetes; (iii) depression; and (iv) high blood pressure.[3]  (A.R. 90, 109).

Social Security denied both of Plaintiff's applications on September 2, 2011.  (A.R. 182, 186).  On December 6, 2011, upon Plaintiff's request for reconsideration, Social Security affirmed the denial of Plaintiff's application.  (A.R. 190, 194).  Plaintiff then requested a hearing before an ALJ.  (A.R. 199).  The ALJ held a hearing on August 20, 2012, during which Plaintiff was represented by an attorney.  (A.R. 40-71).  In his October 10, 2012 decision (the "Second Decision"), the ALJ found that Plaintiff is not disabled.  (A.R. 20-31).  The Appeals Council denied Plaintiff's request for review. (A.R. 1-4).  On May 28, 2014, Plaintiff filed a Complaint (Doc. 1) pursuant to 42 U.S.C. § 405(g) requesting judicial review and reversal of the Second Decision.

---

[3] Plaintiff did not include depression as an impairment in her initial application, but raised it in her application for reconsideration.  (A.R. 107, 140).

**B.  The ALJ's Application of the Five-Step Disability Analysis**

The ALJ completed steps one through four of the disability analysis before finding that Plaintiff is not disabled and entitled to disability benefits.

### 1.  Step One: Engagement in "Substantial Gainful Activity"

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since July 9, 2010, the alleged disability onset date.  (A.R. 23).  Neither party disputes this determination.

### 2.  Step Two: Presence of Medically Severe Impairment/Combination of Impairments

The ALJ found that Plaintiff has the following impairments that are severe when they are considered in combination: (i) diabetes mellitus; (ii) status post two heart attacks, a four vessel coronary artery bypass graft, and stenting; (iii) coronary artery disease; (iv) hypertension; (v) kidney disease; (vi) obesity; (vii) depression; and (viii) a history of methamphetamine abuse in full sustained remission.  (A.R. 23).  This determination is unchallenged.

### 3.  Step Three: Presence of Listed Impairment(s)

The ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Social Security regulations.  (A.R. 24).  Neither party disputes the ALJ's determination at this step.

### 4.  Step Four:  Capacity to Perform Past Relevant Work

The ALJ found that Plaintiff has retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), subject to several restrictions.  (A.R. 25).  The ALJ determined that Plaintiff is limited to semi-skilled work and cannot perform work that requires crawling, crouching, climbing, squatting, kneeling, or use of the lower extremities for pushing or pulling of leg or foot controls.  (*Id*.).  Based on the testimony of a vocational expert ("VE") and Plaintiff's

RFC, the ALJ determined that Plaintiff can perform her past relevant work as a receptionist. (A.R. 31).

Plaintiff challenges the ALJ's step four determination on several grounds. Plaintiff argues that the ALJ committed harmful error by failing to discuss the opinions of two examining physicians and one treating physician. Plaintiff also argues that the ALJ improperly rejected Plaintiff's testimony regarding her symptoms. Finally, Plaintiff argues that the ALJ improperly discounted the third party function report prepared by Plaintiff's sister. For the reasons explained in Section II(C) below, the Court does not find that the ALJ committed reversible error in determining Plaintiff's RFC and finding that Plaintiff can perform her past relevant work as a receptionist.

### 5. Step Five: Capacity to Perform Other Work

The ALJ's analysis did not proceed to the fifth step as the ALJ found at step four that Plaintiff is not disabled.

### C. Plaintiff's Challenge at Step Four

#### 1. Opinions of Drs. William Chaffee, Marcel Van Eerd, and Steven Ting

"The principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." *Chavez v. Bowen,* 844 F.2d 691, 693 (9th Cir. 1988). A presumption of nondisability applies to a claimant's disability application filed after Social Security has issued a final decision that a claimant is not disabled. *Id.* To overcome the presumption, the claimant must prove "changed circumstances indicating greater disability." *Id.*

Here, the ALJ determined that Plaintiff rebutted the presumption of "not disabled" established by the First Decision. (A.R. 23). The ALJ held that the evidence shows "changed circumstances affecting the issue of disability with respect to the unadjudicated period" as there are indications that Plaintiff's diabetes has worsened over time. (*Id.*). The Second Decision focuses on medical reports dated after the First Decision. The

Second Decision does not discuss the following opinions of three physicians that were considered in the First Decision:

1.  In his April 14, 2009 report, Dr. Chaffee opined that Plaintiff can never reach, handle, finger, or feel.  (A.R. 372).  At the August 2012 hearing, the VE testified that those limitations would preclude Plaintiff from performing her past work as a receptionist.  (A.R. 67).

2.  After an examination on April 28, 2009, Dr. Van Eerd diagnosed Plaintiff with a depressive disorder.  (A.R. 376).  In his Psychological/Psychiatric Medical Source Statement, Dr. Van Eerd opined that Plaintiff's condition "has or will impose" limitations for 12 months.  Dr. Van Eerd stated that Plaintiff has good basic ability to remember simple work-like instructions; has good basic skills in attending and concentrating to carry out short simple instructions; has fair ability to interact with others; and presents with good basic response to change and novel information.  (A.R. 377).

3.  On March 15, 2010, Plaintiff's treating physician, Dr. Steven Ting, opined that Plaintiff could sit for two hours at a time, stand/walk for less than two hours at a time, carry/lift less than ten pounds, never climb, crouch, or kneel, and occasionally engage in the repetitive use of the right and left hands and feet.  (A.R. 411).

Plaintiff argues that the ALJ's failure to discuss the above opinions in the Second Decision constitutes reversible error.  (Doc. 23 at 14-16).  To address Defendant's assertion that principles of res judicata preclude Plaintiff's argument, Plaintiff points to the fact that the ALJ admitted the reports of Drs. Chaffee, Van Eerd, and Ting into the record at the August 2012 hearing.  (Doc. 33 at 3).  The ALJ, however, also admitted the First Decision into the record.  (A.R. 75-89).  In the First Decision, the ALJ discussed and explained the weight given to Drs. Chaffee, Van Eerd, and Ting's opinions.  (A.R. 83-84).  To the extent Plaintiff is attempting to relitigate the disability determination in the First Decision, Plaintiff's challenge is precluded by the res judicata doctrine.  *See Taylor v. Heckler*, 765 F.2d 872, 876 (9th Cir. 1985).

Further, the Ninth Circuit has held that an ALJ does not need to discuss all evidence.  An ALJ needs to only discuss why probative evidence has been rejected. *Vincent v. Heckler,* 739 F.2d 1393, 1395 (9th Cir. 1984).  Medical evidence that pre-dates a claimed period of disability is generally not probative evidence.  *Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir. 1985) ("In light of the prior determination that [claimant] was not disabled as of January 19, 1979, medical reports based on observations made prior to January 20, 1979, are irrelevant."); *see also Osmore v. Astrue,* 472 F.App'x 529, 532 (9th Cir. 2012) (explaining that "out-of-date" evidence from before the date of the pending disability application is not probative evidence of that later alleged disability status). Here, Drs. Chaffee, Van Eerd, and Ting wrote their opinions before Plaintiff's alleged disability onset date.  Thus, aside from principles of res judicata, the Court finds that the reports are not probative evidence as to Plaintiff's second application for disability benefits.  For the foregoing reasons, the Court does not find that the ALJ erred by not discussing the opinions of Drs. Chaffee, Van Eerd, and Ting in the Second Decision.

### 2. The ALJ Did Not Improperly Weigh the Opinions of Treating and Examining Physicians

In weighing medical source opinions in Social Security cases, there are three categories of physicians: (i) treating physicians, who actually treat the claimant; (ii) examining physicians, who examine but do not treat the claimant; and (iii) non-examining physicians, who neither treat nor examine the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, more weight should be given to a treating physician's opinion than to the opinion of a non-treating physician.  *Id.*  An ALJ cannot reject a treating physician's opinion in favor of another physician's opinion without first providing specific and legitimate reasons that are supported by substantial evidence, such as finding that a treating physician's opinion is inconsistent with and not supported by the record as a whole.  20 C.F.R. § 404.1527(c)(4) (ALJ must consider whether an opinion is consistent with the record as a whole); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir.

2002); *Tommasetti*, 533 F.3d at 1041 (finding it not improper for an ALJ to reject a treating physician's opinion that is inconsistent with the record).

Here, Plaintiff argues that the ALJ improperly gave limited weight to Plaintiff's treating cardiologist, Dr. Lawrence Kline, and Plaintiff's primary care physician, Dr. Fernando DeCastro.

### i. Dr. Lawrence Kline

In a July 17, 2012 medical assessment, Dr. Lawrence Kline opined that Plaintiff cannot perform fulltime work due to "extreme fatigue" and "fluctuating blood sugars." (A.R. 624). Because Dr. Kline's opinion is controverted by another physician's opinion (consultative examiner Dr. Quirino Valeros), the ALJ must provide specific and legitimate reasons supported by substantial evidence for discounting Dr. Kline's opinion. The ALJ gave several reasons for giving Dr. Kline's opinion limited weight:

1.  Medical records indicate that Plaintiff's chest pain is possibly secondary from a sternal wire rather than representative of ischemic heart disease. (A.R. 26, 380, 464). An October 2010 nuclear stress test showed no significant internal carotid artery stenosis. (A.R. 26, 470-71). A February 2012 cardiac examination revealed regular rate and rhythm without any new murmurs, gallops, or rubs. (A.R. 26, 597). In addition, the results of an electrocardiogram performed at the exam indicated that there were no changes seen as compared to prior tracing done in 2010. (*Id.*). After considering the evidence, including the above, the ALJ found that Dr. Kline's opinion is contradicted by objective findings in the record. (A.R. 29). This is a valid reason for rejecting Dr. Kline's opinion. *See Tommasetti*, 533 F.3d at 1041.

2.  Dr. Kline's treatment notes indicate that Plaintiff denied chest pain and excessive weakness or fatigue. (A.R. 597-98). In addition, the ALJ correctly notes that none of Dr. Kline's treatment records indicate that Plaintiff has limitations in the use of her hands as Dr. Kline opined. (A.R. 29). As such, the ALJ reasonably determined that Dr. Kline's opinion that Plaintiff cannot work are not supported by his own treatment notes. (*Id.*). This is also a specific and legitimate reason supported by substantial

evidence in the record for rejecting Dr. Kline's opinion.  *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001) (an ALJ may properly reject a treating doctor's opinion that a claimant cannot work that is "unsupported by rationale or treatment notes, and offered no objective medical findings to support the existence of [the claimant's] alleged conditions"); s*ee also Thomas v. Barnhart,* 278 F.3d 948, 957 (9th Cir. 2002) (the Commissioner "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings").

3.  In explaining why he discounted Dr. Kline's opinion, the ALJ also noted the infrequency of treatment visits, which were once every six months.  (A.R. 29).  The ALJ inferred that the infrequent visits suggest that Plaintiff's conditions are not as severe as opined.  This is a reasonable inference and is a valid reason for giving Dr. Kline's opinion little weight.  *Tommasetti,* 533 F.3d at 1039-40 (an ALJ may infer that pain is not disabling if claimant seeks only minimal conservative treatment).

For the foregoing reasons, the Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence for giving Dr. Kline's opinion little weight.

### ii.  Dr. Fernando DeCastro

Dr. Fernando DeCastro completed a December 19, 2011 medical assessment in which he opined that Plaintiff could not perform fulltime work.  (A.R. 567).  Dr. DeCastro left the "impairments/diagnosis" section blank, but indicated that Plaintiff's limiting symptoms are dizziness, fatigue, and chest pain.  (A.R. 567-68).  In rejecting Dr. DeCastro's opinion, the ALJ provided reasons similar to the reasons provided when rejecting Dr. Kline's opinion:

1.  Like Dr. Kline's opinion, the ALJ found that Dr. DeCastro's opinion was contradicted by objective evidence in the record.  (A.R. 29).  For the reasons discussed in the preceding section, this is a specific and legitimate reason supported by substantial evidence for discounting Dr. DeCastro's opinion.

1

2

3       2.  The ALJ also found that Dr. DeCastro's opinion that Plaintiff could not work is

4  unsupported by Dr. DeCastro's treatment notes.  (A.R. 29).  The ALJ discussed how Dr.

5  DeCastro consistently reported that Plaintiff had regular heart rate and rhythm with no

6  murmurs, rubs, or gallops.  (A.R. 27).  In addition, Dr. DeCastro's treatment notes

7  indicate that Plaintiff's coronary artery disease and hypertension are stable.[4]  (Id.).  The

8  ALJ correctly stated that none of Dr. DeCastro's treatment records indicate that Plaintiff

9  has limitations in the use of her hands as Dr. DeCastro opined.

10       3.  Finally, the ALJ discussed Dr. DeCastro's statement in his December 19, 2011

11  treatment notes that he is not qualified to do functional capacity evaluations.  (A.R. 29,

12  609).  Dr. DeCastro stated that he would attempt to complete the functional capacity form

13  at Plaintiff's request "as long as [Plaintiff] knows I am not qualified to do [functional

14  capacity evaluations] & will just be asking her these questions."  (A.R. 609).  Given Dr.

15  DeCastro's statements, the ALJ deemed the evaluation completed by Dr. DeCastro "as

16  nothing more than a recantation of [Plaintiff's] subjective complaints."  (A.R. 29).  This

17  is a reasonable finding given that Dr. DeCastro explicitly admitted that he "[does] not do

18  disability or functional capacity evaluations" and would "just be asking" Plaintiff the

19  questions.  (A.R. 609).  "An ALJ may reject a treating physician's opinion if it is based

20  'to a large extent' on a claimant's self-reports that have been properly discounted as

21  incredible."  Tommasetti, 533 F.3d at 1041 (citing Morgan, 169 F.3d at 602).  As the

22  Court finds in Section II(C)(3) below that the ALJ properly discredited Plaintiff's

23  testimony, the Court finds that the ALJ properly discounted Dr. DeCastro's opinion in

24  part because it was based to a large extent on Plaintiff's self-reports.

25       For the above reasons, the Court concludes that the ALJ provided specific and

26  legitimate reasons supported by substantial evidence for giving Dr. DeCastro's opinion

    little weight.

27       [4] Although Plaintiff disputes the ALJ's interpretation of "stable," it is the ALJ's
28  role to resolve ambiguities in the evidence.  Magallanes, 881 F.2d at 750.  The Court
    finds that the ALJ's interpretation of "stable" as meaning the condition is not disabling is
    reasonable.

### iii.  Dr. Amy D'Ambrosio

An ALJ may rely on a VE's testimony that is based on a hypothetical that "contain[s] all of the limitations the ALJ found credible and supported by substantial evidence."  *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014) (alteration in original); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

At the August 2012 hearing, the ALJ recited to the VE the ALJ's assessment of Plaintiff's RFC:

> So if we had a person that was able to do sedentary work, semi-skill, with postural restrictions where there'd be no crawling or crouching or climbing or squatting or kneeling, lower extremity limitations so there'd be no use of the legs or feet for pushing or pulling of foot or leg controls, could a person that had those restrictions do any of the work that [Plaintiff's] done in the past?

(A.R. 66).

The VE testified that Plaintiff would be able to work her past job as a receptionist. (*Id*.).  Plaintiff argues that the ALJ's hypothetical to the VE was deficient as the ALJ failed to include certain limitations opined by consulting psychologist, Dr. Amy D'Ambrosio.  (Doc. 23 at 19-20).

On July 21, 2011, Dr. Amy D'Ambrosio conducted a psychological evaluation of Plaintiff.  (A.R. 520-27).  Dr. D'Ambrosio opined that Plaintiff may have mild difficulties understanding and remembering instructions given by an employer.  (A.R. 527).  Dr. D'Ambrosio further opined that Plaintiff would likely be able to carry out simple instructions in the work setting, but may have mild difficulty carrying out detailed instructions.  (*Id*.).  Dr. D'Ambrosio stated that Plaintiff would likely experience lack of motivation that would "moderately interfere" with her work pace.  (*Id*.).  In addition, Dr. D'Ambrosio found that Plaintiff may have mild difficulties relating to the general public and may have some difficulties interacting with co-workers.  (*Id*.).  Finally, Dr. D'Ambrosio stated that Plaintiff would likely exhibit moderate difficulties responding to

changes in the work setting due to her symptoms of depression, but also stated that Plaintiff would likely be aware of normal hazards and take appropriate precautions. (*Id*.).

Notably, Dr. D'Ambrosio did not define the term "moderate." At the hearing, Plaintiff's attorney asked the VE: "If an individual . . . experienced moderate limitations in her work pace and moderate difficulties in responding to changes in the work setting due to symptoms of depression, would that individual be able to do [Plaintiff's] previous work?" (A.R. 68). Upon the VE's request for a definition of "moderate," Plaintiff's attorney defined "moderate" as "15 percent of the workday being off task." (*Id*.). The VE stated that "If you're off task 15 percent of the workday, you cannot work." (*Id*.).

It is well-settled that the ALJ, not the Court, is responsible for resolving conflicts, ambiguity, and determining credibility. *Magallanes*, 881 F.2d at 750; *see also Andrews*, 53 F.3d at 1039. This includes interpreting terms and phrases used by physicians in their opinions. For example, in *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995), a claimant's treating physician opined that the claimant could perform a "sedentary type job." The ALJ concluded that the physician did not use the term to mean "sedentary work" as defined by Social Security regulations. *Id*. The ALJ assessed that the claimant could perform file clerk work, which Social Security regulations define as "light work." *Id*. at 751. On appeal, the claimant attached a letter from the physician, which stated that the physician intended to use the term "sedentary" within the regulations' technical meaning. *Id*. The Ninth Circuit Court of Appeals agreed with the ALJ's interpretation of the physician's opinion as there "was no evidence at all before the ALJ" to indicate that the physician meant that the claimant could only perform "sedentary work" as defined by Social Security regulations. *Id*. at 750. The Court also refused to remand the case for consideration of the physician's newly-submitted letter as the claimant did not establish good cause for failing to submit the evidence during the administrative proceedings. *Id*. at 751. Finding that substantial evidence supported the ALJ's conclusions, the Court affirmed the ALJ's decision. *Id*.

Plaintiff has the burden of proof at step four of the disability analysis. That is, Plaintiff is ultimately responsible for providing the evidence to be used in making the RFC finding. *Andrews v. Shalala*, 53 F.3d 1035, 1040 (9th Cir. 1995) (a claimant bears the burden of proving entitlement to disability benefits). Plaintiff could have requested that Dr. D'Ambrosio answer interrogatories or be subpoenaed at a hearing to clarify her meaning of the phrases "moderate difficulties" and "moderate limitations," but Plaintiff did not.[5] Thus, like in Orteza, there was no evidence at all before the ALJ as to Dr. D'Ambrosio's intended definitions of the phrases "moderate difficulties" and "moderate limitations."

The ALJ gave significant weight to Dr. D'Ambrosio's opinion and interpreted the opinion as being "supportive of [Plaintiff's] ability to perform semi-skilled work." (A.R. 30). The Court finds that this interpretation is rational and must be upheld. *See Morgan*, 169 F.3d at 599.

### 3. The ALJ Did Not Improperly Weigh Plaintiff's Credibility

When evaluating the credibility of a plaintiff's testimony regarding subjective pain or symptoms, the ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). In the first step, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The plaintiff does not have to show that the

---

[5] Any argument that the case should be remanded for a determination of Dr. D'Ambrosio's intended meaning of "moderate difficulties" and "moderate limitations" has been waived. *Meanel v. Apfel*, 172 F.3d 1111, 1115(9th Cir. 1999) (at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal); *Bray v. Commissioner of Social Security Admin*, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009) (deeming argument not made in disability claimant's Opening Brief waived). The ALJ, rather than the Court, was in the optimal position to resolve any ambiguities in statements made in Dr. D'Ambrosio's report. *See Meanel*, 172 F.3d at 1115. The Court does not find that manifest injustice would occur in deeming the argument waived. *Id.* (failure to comply with waiver rule is only excused when necessary to avoid manifest injustice).

impairment could reasonably be expected to cause the severity of the symptoms. Rather, a plaintiff must only show that it could have caused some degree of the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If a plaintiff meets the first step, and there is no evidence of malingering, the ALJ can only reject a plaintiff's testimony about the severity of his or her symptoms by offering specific, clear, and convincing reasons. *Lingenfelter*, 504 F.3d at 1036. The ALJ cannot rely on general findings. The ALJ must identify specifically what testimony is not credible and what evidence undermines the plaintiff's complaints. *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). In weighing a plaintiff's credibility, the ALJ can consider many factors including: a plaintiff's reputation for truthfulness, prior inconsistent statements concerning the symptoms, unexplained or inadequately explained failure to seek treatment, and the plaintiff's daily activities. *Smolen*, 80 F.3d at 1284; *see also* 20 C.F.R. § 404.1529(c)(4) (Social Security must consider whether there are conflicts between a claimant's statements and the rest of the evidence). In addition, although the lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his or her credibility analysis. *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005); *see also* 20 C.F.R. 404.1529(c); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (while subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects).

Here, Plaintiff argues that the ALJ erred in discrediting Plaintiff's testimony regarding her subjective symptoms. In Section 6 of the ALJ's decision, the ALJ explained the two-step process to be used in determining the credibility of a claimant's symptoms. (A.R. 25). After summarizing Plaintiff's symptom testimony, the ALJ stated that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms are not fully credible since they are not

supported in their intensity or severity by the objective medical evidence. (A.R. 26). Plaintiff asserts that "objective findings do support stated limitations." (Doc. 23 at 22). Plaintiff also argues that the ALJ "does not identify the objective data believed to conflict with a specific stated limitation. An ALJ's general findings are insufficient." (Doc. 23 at 22-23). The Court finds that the ALJ did identify the objective evidence believed to conflict with Plaintiff's alleged limitations. In fact, the ALJ engages in a thorough discussion of the evidence highlighting normal examination findings. (A.R. 26-29). Much of this evidence overlaps the evidence supporting the ALJ's reasons for discounting the opinions of Drs. Kline and DeCastro, which is discussed in Section II(C)(2) above. This includes, but is not limited to the following:

1. Plaintiff's claims of disabling conditions, such as the October 2010 nuclear stress test showing no significant internal carotid artery stenosis and the 2012 echocardiogram that was unchanged as compared to prior tracing done in 2010. (A.R. 470-71).

2. Records from Dr. Kline noted that Plaintiff offered no new cardiac complaints and no complaints of exertional or at rest chest pains from September 2010 through February 2012. (*e.g.* 466, 598).

3. Plaintiff frequently denied chronic heart failure symptoms, palpitations, syncope, near syncope, nausea, vomiting, diaphoresis, excessive weakness or fatigue, and other symptoms. (*e.g.* A.R. 455, 466, 598). Although some records do indicate that Plaintiff was experiencing chest pain, there is no indication that the pain was disabling. For example, an August 12, 2010 treatment record from Dr. DeCastro's office states "chest pain: yes, at patient's baseline." (A.R. 480).

4. May 2011 treatment records indicate that Plaintiff's diabetes, chest pains, coronary atherosclerosis, kidney disease, and hypertension are stable. (A.R. 491).

5. Regarding Plaintiff's diabetes, the ALJ found that Plaintiff's history of noncompliance with her diabetes treatment plan adversely affected her credibility. (A.R. 27). Contrary to Plaintiff's contention, the record reflects that Plaintiff has been

noncompliant.  Dr. DeCastro's January 28, 2010 treatment notes indicate that Plaintiff's diabetes has worsened and stated that "[c]ompliance issues [were] reviewed in detail.  Need for compliance with management/Meds stressed.  Informed of and understands risk and consequences of not controlling disease process . . . Blood sugar control measures emphasized."  (A.R. 416).  On February 21, 2011, Dr. DeCastro noted that Plaintiff "[d]oes not take Novolog before lunch.  Sometimes does not give dinner insulin also." (A.R. 484).  Dr. DeCastro again emphasized to Plaintiff the importance of disease control.  (*Id*.).  On March 20, 2012, Dr. DeCastro addressed Plaintiff's compliance issues yet again.  (A.R. 601).  The logical inference from Dr. DeCastro's emphasis on medication compliance and disease control is that Dr. DeCastro expected Plaintiff's condition to improve with proper management.  The ALJ properly relied on Plaintiff's noncompliance with Dr. DeCastro's prescribed course of treatment in discrediting her testimony.  *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989) (evidence regarding claimant's daily activities, his lack of more extensive medical treatment, and his failure to follow prescribed treatment justified ALJ's decision to disbelieve claimant's allegation of excess pain); *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (factors that an ALJ may consider in weighing a claimant's credibility include unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment); *see also Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be controlled with medication are not disabling for Social Security purposes).

6.  Plaintiff is able to do the laundry, wash dishes, prepare meals, socialize with family, transport her son to and from school, manage money, and care for her personal hygiene.  (A.R. 284-87; 520-21; 524).  The ALJ concluded that Plaintiff's daily activities evidence "substantially greater functional capabilities."  This is a valid reason for finding Plaintiff's testimony not fully credible.  *See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (upholding denial of disability benefits where claimant could "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries"); *see also Molina*, 674 F.3d at 1113 ("Even where [daily] activities suggest some difficulty

- 18 -

functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

7.  Regarding Plaintiff's mental impairments, the ALJ found that Plaintiff has "not generally received the type of mental health treatment one would expect for a totally disabled individual" as the record indicates that Plaintiff received conservative treatment including no more than medication management by her primary care physician.  (A.R. 28).  *See Parra,* 481 F.3d at 751 (noting "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *see also Warre*, 439 F.3d at 1006.  The ALJ also cited Dr. D'Ambrosio's report, which shows that mental status testing was grossly normal.  (A.R. 28).  Even if the ALJ did err in considering whether Plaintiff is taking psychotropic medications, the error is harmless as the ALJ provided other clear and convincing reasons for discrediting Plaintiff's testimony.  *See Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1162 (9th Cir. 2008) (finding harmless error where "two of the ALJ's [four] reasons supporting his adverse credibility finding [were] invalid"); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1195–97 (9th Cir. 2004) (finding any error in one of the ALJ's reasons for discrediting claimant was harmless as the ALJ provided other valid reasons).

The ALJ's credibility finding in this case is unlike the brief and conclusory credibility findings that the Ninth Circuit Court of Appeals has deemed insufficient in other cases.  For example, in *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1102-03 (9th Cir. 2014), an ALJ stated in a single sentence that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  The Court of Appeals held that stopping after this introductory remark "falls short of meeting the ALJ's responsibility to provide a discussion of the evidence and the reason or reasons upon which his adverse determination is based."  *Id.* at 1103 (internal quotation marks omitted); *see also* 42 U.S.C. § 405(b)(1).  The Court further stated that an ALJ's "vague allegation that a claimant's testimony is not consistent

with the objective medical evidence, without any specific findings in support of that conclusion is insufficient for our review." *Id.* (quoting *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009)).

In *Robbins v. Astrue*, 466 F.3d 880, 883-84 (9th Cir. 2006), the Court of Appeals found the ALJ's "fleeting credibility finding" insufficient.  The ALJ simply stated that (i) the claimant's testimony was "not consistent with or supported by the overall medical evidence of record" and (ii) "[claimant's] testimony regarding his alcohol dependence and abuse problem remains equivocal." *Id.*  In discussing why the ALJ's finding was insufficient, the Court explained that the ALJ did not provide a "narrative discussion" containing "specific reasons for the finding . . .supported by the evidence in the record." *Id.* at 884-85.

Similarly, in *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995), an ALJ simply concluded that the claimant's complaints were "not credible" and "exaggerated."  The Court held that the finding was insufficient as the ALJ did not provide any specific reasons for disbelieving the claimant other than a lack of objective evidence. *Id.* at 834.

The ALJ's credibility finding in this case is more like the credibility finding in *Stubbs-Danielson v. Astrue,* 539 F.3d 1169, 1175 (9th Cir. 2008).  In *Stubbs-Danielson*, the Ninth Circuit Court of Appeals found that an ALJ sufficiently explained the reasons for discrediting a claimant's symptom testimony where the ALJ stated that:

> The claimant's allegations as to the intensity, persistence and limiting effects of her symptoms are disproportionate and not supported by the objective medical findings nor any other corroborating evidence. The record reflects that the claimant has normal activities of daily living, including cooking, house cleaning, doing laundry, and helping her husband in managing finances.
>
> * * *
>
> These activities tend to suggest that the claimant may still be capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis.

Here, unlike in *Treichler*, *Robbins*, and *Lester*, the ALJ goes beyond making a "fleeting" and conclusory remark that Plaintiff's testimony is not credible.  The ALJ thoroughly discussed the evidence and explained the inconsistencies in the record that he found discredited Plaintiff's testimony.  It is possible that a different ALJ would find Plaintiff's symptom testimony credible.  But it is not the Court's role to second guess an ALJ's decision to disbelieve a Plaintiff's allegations.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("An ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . .").   Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.  *Morgan*, 169 F.3d at 599.  The Court finds that the reasons provided by the ALJ for discrediting Plaintiff's testimony are specific, clear, convincing, and are supported by substantial evidence in the record.  The Court therefore finds that the ALJ did not err in discrediting Plaintiff's subjective testimony.

### 4.  Third Party Function Report Completed by Plaintiff's Sister

Social Security considers observations by nonmedical sources (i.e. lay witnesses) about how impairments affect a claimant's ability to work.  20 C.F.R. § 404.1513(d)(4).  Lay witnesses are treated as "other sources."  *Id*.  An ALJ may only discount lay witness testimony by providing "reasons that are germane to each witness."  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Plaintiff submitted a third party function report completed by Plaintiff's sister, dated May 21, 2011.  (A.R. 292-94).  The ALJ explained in a single sentence that he gave the sister's opinions little weight "because of their high degree of subjectivity, and their lack of medically acceptable standards."  (A.R. 30).  The ALJ's reasoning is unclear, but the wording suggests that the ALJ rejected the sister's testimony on the grounds that she was not competent to opine as to Plaintiff's limitations.  If so, that is an invalid reason for rejecting the testimony.  *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987) (holding that friends and family members are in a position to observe a claimant's symptoms and daily activities and are competent to testify as to the claimant's condition).  Yet any error

in failing to provide proper reasons for rejecting the third party function report is harmless as (i) the statements of Plaintiff's sister duplicate Plaintiff's testimony, which the ALJ properly discredited and (ii) the error would not alter the validity of the ALJ's ultimate nondisability determination.  *See Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony"); *Molina*, 674 F.3d at 1117 ("Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se.").

### III.  CONCLUSION

Based on the foregoing, the Court finds that the ALJ's Second Decision is supported by substantial evidence and is free from reversible error.  Accordingly, the decision of the Commissioner of Social Security is affirmed.

**IT IS THEREFORE ORDERED** affirming the decision of the Commissioner of Social Security.  The Clerk of Court shall enter judgment accordingly.

Dated this 24th day of July, 2015.

_____

Eileen S. Willett
United States Magistrate Judge